```
        IN THE UNITED STATES DISTRICT COURT
      FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

                       CHARLESTON
```

**BETH A. CHARLES,**

      **Plaintiff,**

v.                                          CASE NO. 2:07-cv-00604

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

      **Defendant.**

## <u>M E M O R A N D U M   O P I N I O N</u>

This is an action seeking review of the decision of the Commissioner of Social Security denying Claimant's application for Supplemental Security Income ("SSI"), under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. Both parties have consented in writing to a decision by the United States Magistrate Judge.

Plaintiff, Beth Ann Charles (hereinafter referred to as "Claimant"), protectively filed an application for SSI on January 15, 2004, alleging disability as of August 9, 2000, due to back problems, depression and anxiety. (Tr. at 12, 48-51, 65, 82.) The claim was denied initially. (Tr. at 32-34.) The request for reconsideration also was denied after Claimant did not file a timely request for reconsideration[1]. (Tr. at 32-34, 36-38.) On January 7, 2005, Claimant requested a hearing before an

---

[1] The ALJ found good cause for Claimant's failure to file the reconsideration in a timely manner. (Tr. at 12, 15.)

Administrative Law Judge ("ALJ").  (Tr. at 39.)  The hearing was held on September 20, 2006, before the Honorable Theodore Burock.  (Tr. at 245-69.)  By decision dated October 27, 2006, the ALJ determined that Claimant was not entitled to benefits.  (Tr. at 12-25.)  The ALJ's decision became the final decision of the Commissioner on August 3, 2007, when the Appeals Council denied Claimant's request for review.  (Tr. at 3.)  On October 1, 2007, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability.  See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 1382c(a)(3)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R. § 416.920 (2006).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  Id. § 416.920(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  Id. § 416.920(b).  If the claimant is not, the second inquiry is whether claimant suffers

from a severe impairment. Id. § 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. § 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 416.920(f) (2006). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the alleged onset date. (Tr. at

3

15.) Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of obesity, bipolar disorder and back strain. (Tr. at 15.) At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 15.) The ALJ then found that Claimant has a residual functional capacity for light work, reduced by nonexertional limitations. (Tr. at 16.) Claimant has no past relevant work. (Tr. at 22.) Nevertheless, the ALJ concluded that Claimant could perform jobs such as hand packer, produce sorter and custodian cleaner, which exist in significant numbers in the national economy. (Tr. at 23.) On this basis, benefits were denied. (Tr. at 24.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with

resolving conflicts in the evidence. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

<u>Claimant's Background</u>

Claimant was forty-six years old at the time of the administrative hearing. (Tr. at 248.) Claimant completed the twelfth grade. (Tr. at 250.) In the past, she worked at a fast food restaurant. (Tr. at 251.)

<u>The Medical Record</u>

The court has reviewed all evidence of record, including the medical evidence of record, and will summarize it briefly below.

Claimant underwent a hysterectomy in September of 2003. (Tr. at 127-28.)

The record includes treatment notes from Chappell A. Collins, Jr., M.D. dated February 27, 2001, through December 22, 2003. The treatment notes indicate treatment for headaches and hip pain, among others. (Tr. at 142-50.)

On August 26, 2004, Paul E. Peach, M.D. examined Claimant. Claimant was not taking any medication. Claimant reported chronic

low back pain since 1991.  On physical examination, Claimant's gait was normal and unrestricted, but Claimant occasionally complained of pain.  Motor exam was 5/5 in the upper and lower extremities.  Heel-toe standing, grip and dexterity were normal.  Sensation was intact to light touch pinprick.  Deep tendon reflexes were 1 plus and symmetric in both the upper and lower extremities.  Range of motion in all extremities and the cervical and lumbar spine were normal.  Dr. Peach diagnosed chronic lumbar strain with intact neurologic examination.  (Tr. at 151.)

The record includes treatment notes from Albany Area Community Service Board dated October 13, 2004, through December 8, 2007.  (Tr. at 160-218.)  On a Physical Pain Assessment Summary dated October 13, 2004, Claimant reported pain from migraines.  (Tr. at 218.)  On December 1, 2004, Claimant was diagnosed with mild depression and rule out underlying dysthymia.  She was prescribed Wellbutrin. (Tr. at 211.)  On February 3, 2005, Claimant reported she was depressed because things in her life were not going right.  Claimant admitted she stole money to buy crack cocaine.  Claimant was unemployed.  (Tr. at 202.)  Claimant last used crack cocaine on February 1, 2005, and reported using it "every now and then."  (Tr. at 204.)  Claimant was prescribe Wellbutrin.  (Tr. at 201.)  On February 3, 2005, Claimant was diagnosed with major depressive disorder and polysubstance abuse on Axis I.  (Tr. at 197.)  Claimant was admitted voluntarily to the crisis unit from February

3, 2005, through February 7, 2005.  (Tr. at 196.)  Claimant stated that she wanted to be admitted to get away from home because her ex-husband was abusive.  Claimant had tried cocaine and reported that she stole money from a family member to buy the drug.  William Miles, M.D. diagnosed major depression, single episode and cocaine abuse on Axis I.  He deferred an Axis II diagnosis.  He rated Claimant's GAF at 40.  (Tr. at 195.)  On February 7, 2005, Claimant requested discharge.  She was prescribed Wellbutrin.  (Tr. at 192.)

On February 8, 2005, Claimant complained of depression and anxiety attacks after using cocaine for the first time.  (Tr. at 184.)  On April 6, 2005, a physician assessed Claimant, who was incarcerated at the time.  She reported she had seen her brother killed when she was nine years old and has been depressed since then.  Claimant reported that she lacks energy and worries about failure.  Claimant also reported an abusive marriage, though she had since divorced her husband.  Claimant reported she sees images, but does not hear voices.  She was diagnosed with depression with psychosis and prescribed Lexapro, Trazodone and Risperdol.  (Tr. at 182.)  On July 23, 2005, Claimant reported to a physician that her medication was not working.  The Lexapro, Trazadone and Risperdol were discontinued.  Claimant was prescribed Zyprexa.  (Tr. at 175, 180.)  On September 7, 2005, Claimant reported to a physician that she had been released from incarceration in June of 2005.  Her thoughts were scattered and she was anxious around people.

Claimant was living in her ex-husband's house with her daughter. (Tr. at 180.)  Claimant heard voices, but had no visions.  Claimant was diagnosed with major depressive disorder, rule out bipolar. Zyprexia and Lithium were discontinued, her Risperdal was increased and she was also prescribed Depakote and Trazodone.  (Tr. at 161.) On October 14, 2005, Claimant was evaluated and her diagnoses included major depressive disorder on Axis I and panic disorder with agoraphobia on Axis II.  Her GAF was rated at 57.  (Tr. at 164.)  On December 8, 2005, a physician noted a long history of depression and irritability.  (Tr. at 161.)

On August 17, 2006, Claimant reported to the emergency room with complaints of pain in her right thigh.  Cranial nerves were intact.  Deep tendon reflexes were symmetrical.  There was no focal motor or sensory change.  Ultrasound showed no evidence of deep venous thrombosis.  The impression was "[p]ain in right leg of undetermined cause."  (Tr. at 221.)  Claimant was given an off work slip and told to follow up with a Dr. Ramesh.  (Tr. at 221.)

The record includes pharmacological management treatment notes from Process Strategies dated March 2, 2006, and April 5, 2006. (Tr. at 240-43.)  On March 2, 2006, Claimant complained of anxiety and poor sleep.  Claimant was diagnosed with bipolar disorder on Axis I. There was no Axis II diagnosis.  (Tr. at 240-41.)  On April 5, 2006, Claimant reported problems with her daughter and financial troubles.  She was very anxious.  Claimant was diagnosed with

bipolar disorder and history of polysubstance abuse on Axis I, an Axis II diagnosis was deferred. (Tr. at 242.)

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ erred in assessing Claimant's pain and credibility; (2) the ALJ erred in failing to afford controlling weight to Claimant's treating sources; (3) the ALJ failed to properly account for Claimant's psychological impairments; and (4) the ALJ failed to consider Claimant's impairments in combination. (Pl.'s Br. at 3-11.)

The Commissioner argues that (1) Claimant was not credible; and (2) the ALJ properly considered Claimant's mental impairments. (Def.'s Br. at 6-8.)

Claimant first argues that the "objective medical evidence supports Ms. Charles' testimony that she has difficulty walking and standing as a result of her significant back and leg pain," and, as a result, the ALJ erred in rejecting Claimant's subjective complaints of pain. (Pl.'s Br. at 4.) Claimant further asserts that the ALJ did not conduct a proper analysis of Claimant's subjective complaints and made conclusory findings. (Pl.'s Br. at 4.) Claimant asserts that although she has not had extensive treatment for her conditions, this is because of lack of medical insurance or sufficient funds to pursue treatment. (Pl.'s Br. at 6.)

The court finds that the ALJ's pain and credibility analysis is consistent with the applicable regulation, case law and social security ruling ("SSR") and is supported by substantial evidence. 20 C.F.R. § 416.929(b) (2006); SSR 96-7p, 1996 WL 374186 (July 2, 1996); Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). In his decision, the ALJ found that Claimant had the severe impairments of back strain, obesity and bipolar disorder. (Tr. at 15.) In his pain analysis, the ALJ determined that Claimant had medically determinable impairments that could reasonably be expected to cause Claimant's alleged symptoms. (Tr. at 17.) Contrary to Claimant's assertions, the ALJ's decision contains a thorough consideration of Claimant's daily activities, the location, duration, frequency, and intensity of Claimant's pain, precipitating and aggravating factors and Claimant's medication. (Tr. at 16-17.)

Furthermore, the ALJ provides an adequate explanation for his determination that Claimant was not entirely credible, and his findings are supported by substantial evidence. Claimant's assertion that the ALJ made conclusory findings about Claimant's pain and credibility simply is not true. Instead, the ALJ explained that Claimant's alleged onset, around the date of her fortieth birthday and soon after her divorce, does not coincide with any change or worsening of her medical condition. (Tr. at 17.) The ALJ noted the objective medical evidence of record indicating that prior to her onset, Claimant sought treatment for

10

conditions other than her back pain and mental illness. (Tr. at 18.)

    The ALJ further found that

> [a]s to credibility, the claimant testified to some physical symptoms and limitations not supported by the medical evidence in file, e.g., that she can walk only 3 blocks and then must rest for two hours, that her back pain is burning, numbness, stabbing, and constant if she is on her feet and if she sits for over 20 minutes. Despite these alleged symptoms, the claimant has never sought treatment for back pain. On her recent visit to the emergency room, she did not complain of back pain, but pain in her thigh with a history of deep venous thrombosis (DVT); there is nothing in file to show the claimant has ever been treated for, or even alleged DVT before; an ultrasound showed no evidence of DVT (Exhibit B-8 F). On examination in the emergency room, no pain, tenderness, or neurological changes were found; there was no evidence of back pain (Exhibit B-8F). The claimant alleges that she has no money for treatment, yet in the two years just prior to the alleged onset date, she made frequent doctor and hospital visits for numerous ailments and had surgery, but never mentioned back pain (Exhibits B-1 F, B-2F, B-3F, & B-4F). There is no medical evidence in file to support the claimant's allegations that her migraine headaches were "caused" by back pain. It is noteworthy that Dr. Peach's consultative examination showed basically normal results, which does not support the claimant's testimony of extreme pain and limitations. (Exhibit B-5F).

(Tr. at 20.)

    In addition, the ALJ noted the inconsistencies in Claimant's complaints of mental limitations and the evidence of record. (Tr. at 20-21.) The ALJ noted inconsistencies in Claimant's alleged daily activities, as well as inconsistencies regarding drug use. The ALJ noted that Claimant's work after onset casts doubt on her credibility, particularly because of inconsistent statements in

that regard. (Tr. at 22.)

The ALJ's reasons for finding Claimant not entirely credible are well reasoned, well explained and supported by substantial evidence. The court notes that the objective medical evidence of record cited above contains little in the way of evidence supporting a debilitating back impairment. Indeed, consideration of the evidence related to the factors identified in the regulation certainly points to a finding that Claimant's physical limitations are not credible. Claimant's mental limitations are more complicated in light of her past drug abuse, but the ALJ's reasons for rejecting these complaints also are supported by substantial evidence.

Finally, the ALJ properly considered Claimant's claims that she could not afford treatment. As noted above, the ALJ found that Claimant "alleges that she has no money for treatment, yet in the two years just prior to the alleged onset date, she made frequent doctor and hospital visits for numerous ailments and had surgery, but never mentioned back pain Exhibits B-1 F, B-2 F, B-3 F, & B-4F)." (Tr. at 20.) In addition, as the Commissioner points out, Claimant alleged poverty, but managed to afford cigarettes and, at one point a cocaine addiction costing $50.00 per day. (Def.'s Br. at 7 n.3.)

Next, Claimant argues that the ALJ ignored Claimant's bipolar disorder and erred in not affording weight to the evidence from

Process Strategies. Claimant argues that the record should have been kept open to allow ample time to contact the physicians at Process Strategies. (Pl.'s Br. at 6, 8-9.) Claimant asserts that the ALJ's hypothetical question did not properly account for limitations related to her bipolar disorder. (Pl.'s Br. at 8.)

The ALJ determined that Claimant had severe bipolar disorder, among other impairments. (Tr. at 15.) The ALJ fully considered the evidence of record related to Claimant's mental condition in his decision and, in particular and as noted above, in assessing Claimant's subjective complaints. The ALJ ultimately concluded that Claimant's bipolar disorder reduced Claimant's residual functional capacity by limiting Claimant to "repetitive tasks involving only incidental public contact and no production-line or piece-rate work." (Tr. at 16.)

The ALJ stated that he declined to afford any weight to the diagnoses made by sources at Process Strategies in treatment notes dated March 2, 2006, and April 5, 2006, summarized above, because the name and title of the medical staff person is illegible. (Tr. at 20.) However, these medical records from Process Strategies are the only ones of record that definitively diagnosis bipolar disorder, thus suggesting that the ALJ afforded them some weight since he found this impairment to be severe. In any event, these medical records, submitted at the administrative hearing, are largely cumulative of other mental health evidence in the record.

13

They are handwritten pharmacological management notes that indicate Claimant's continued complaints of poor sleep and anxiety. (Tr. at 240-43.)

The ALJ did not err in failing to develop the record further regarding the evidence from Process Strategies. It is Claimant's responsibility to prove to the Commissioner that she is disabled. 20 C.F.R. § 416.912(a) (2006). Thus, Claimant is responsible for providing medical evidence to the Commissioner showing that she has an impairment. Id. § 416.912(c). Claimant's counsel never requested that she be permitted additional time to submit evidence after the hearing. In short, the medical evidence of record related to Claimant's mental condition was sufficient from which the ALJ could make an informed decision. As such, no further development was necessary, particularly in the instant matter, where it appears the ALJ did indeed credit the diagnosis of the medical sources at Process Strategies.

Finally, Claimant argues that the ALJ failed to consider Claimant's impairments in combination. (Pl.'s Br. at 9.)

The court finds that the ALJ adequately considered Claimant's impairments alone and in combination in keeping with 20 C.F.R. § 416.923 (2006). The ALJ's decision reflects a careful consideration of all of Claimant's impairments and their combined effect. In his decision, the ALJ stated that Claimant's impairments, in combination, have more than a minimal effect on

14

Claimant's ability to do basic work activities. (Tr. at 15.) Elsewhere in his decision, including in his analysis of Claimant's residual functional capacity and in assessing Claimant's subjective complaints, the ALJ's decision reflects a careful consideration of Claimant's combined impairments.

After a careful consideration of the evidence of record, the court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the final decision of the Commissioner is AFFIRMED and this matter is DISMISSED from the docket of this court.

The Clerk of this court is directed to transmit copies of this Order to all counsel of record.

ENTER: March 5, 2009

*Mary E. Stanley*
Mary E. Stanley
United States Magistrate Judge

15